LUDDEN & BATES v. SUMTER.

1. CLAIM AND DELIVERY—PRINCIPAL AND AGENT—EVIDENCE—CHATTEL MORTGAGE.—In a claim and delivery suit, it is incompetent for an agent of the mortgagee, who is authorized to seize the property under the mortgage, to state a conversation in regard to seizing the

property had with a third party, without proof that such third party was the agent of the mortgagor.

2. IBID.—IBID.—IBID.—IBID.—In a claim and delivery suit, where it is sought to bind the mortgagor by conversations with his agent; when such reputed agent is sworn by mortgagor, and not asked by mortgagee on cross-examination as to the conversation, and the mortgagor afterwards swears that such person was her agent at a later time, it is incompetent for the mortgagee to prove the conversation in reply.

3. IBID.—EVIDENCE.—In a claim and delivery suit, the question, "What did you do in reference to it?" propounded to the agent of plaintiff, is too uncertain and indefinite to elicit a proper answer in regard to the demand of possession and refusal.

4. IBID.—REQUEST.—While the request, "that if the jury concludes that the defendant denied the title of plaintiff to the property in dispute prior to the commencement of this action, it is not necessary to show demand," may embody a correct proposition of law, yet there is no error in refusing such request in this case, as there was nothing in the evidence to call for or require such instruction.

Before WATTS, J., Sumter, October, 1895.  Affirmed.

Action by Ludden & Bates Southern Music House against Catherine W. Sumter, for possession of one piano. The facts are fully stated in the opinion. Verdict for defendant. Plaintiff appeals.

*Messrs. Haynesworth & Haynesworth* and *Lee & Moise*, for appellants, cite, on second point: 1 Bail., 546; 2 Strob. Eq., 375; 5 A. & E. Ency., 528; 24 Ia., 322; 52 Ia., 406; 34 Miss., 385; 68 Me., 429; 11 S. E. R., 157; 52 Kan., 109; 8 Wash., 630; 50 Kan., 385; 55 N. W. R., 221; 46 N. W. R., 363; 27 S. C., 244; 30 N. W. R., 659; 15 Kan., 219; 19 S. E. R., 761; 16 S. E. R., 916; 17 A. (N. H.), 638; 37 Mass., 20 Pick., 53; 20 Mass., 3 Pick., 262; 1 Rich., 322.

*Messrs. Purdy & Reynolds*, contra, cite, on first point: 53 Wis., 211.  On second point:. 27 S. C., 240; 5 A. & E. Ency., 528; 5 Lans. (N. Y.), 78; 1 Houst. (Del.), 605; 13 Ill., 315.

July 24, 1896.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action for claim and delivery of a piano, sold and delivered by plaintiff to defendant, under a contract, a copy of which is set out in the "Case." By the terms of that contract the defendant was to pay the specified price of the instrument in certain specified instalments; and to secure the payment of any unpaid instalments, the plaintiff retained the title to the piano, until they should be fully paid. It appears that defendant, after paying some of the instalments, made default, and the claim was sent to certain attorneys for collection. These attorneys took from defendant a note, secured by a mortgage of real estate, as she claimed, in satisfaction of the balance due upon the contract; but, as these attorneys claimed, such note and mortgage were taken merely as collateral security for such balance, and not as payment or satisfaction thereof, as they had no authority from plaintiff to accept *payment* in anything but money. Thereupon this action was commenced, and in the complaint, amongst other things, the plaintiff alleged that before the commencement of the action, a demand was made for the possession of the piano, and a refusal on the part of the defendant to comply with such demand. This allegation was denied in the answer, and, as a separate defense, defendant alleged that she was informed and believed that the plaintiff claimed title to the piano under a chattel mortgage, the contract above referred to, which practically amounted to a mortgage, upon which a balance was claimed to be due; but defendant averred that the debt secured by such mortgage had been paid and satisfied by the execution and delivery of the note and real estate mortgage above referred to, which she averred the said attorneys had accepted as payment of the balance of the purchase price of the piano. "Wherefore this defendant alleges, that she holds the legal title to the piano aforesaid, and owes to the plaintiff nothing on said account whatsoever." The case went to trial on these pleadings, and upon the testimony then introduced, and the defendant having obtained a verdict, the plaintiff appealed,

upon the single ground, that the Circuit Judge, presiding at that trial, had erred in refusing to permit the plaintiff to introduce testimony tending to show that the attorneys had no authority from their client, the plaintiff, to accept the note and real estate mortgage above referred to in payment of the balance due on the debt secured by the chattel mortgage on the piano; the Court held that, in the absence of any express authority from their clients, attorneys at law have no right to accept anything but money, in payment of a debt sent to them for collection (see *Ludden & Bates v. Sumter*, 45 S. C.), and the case was remanded to the Circuit Court for a new trial. The case again came on for trial before his Honor, Judge Watts, and a jury, when the defendant again obtained a verdict, and from the judgment entered thereon this appeal has been taken, upon two grounds: 1st. Because of error in "holding it incompetent to inquire of J. E. Gaillard as to what occurred between Thomas Sumter, the husband and agent of the defendant, and himself, when he was on the way to Mrs. Sumter's residence, with the chattel mortgage, for the purpose of seizing the piano under the mortgage. 2d. Because of error in refusing to charge the jury, as requested by plaintiff: 'That if the jury conclude that the defendant denied the title of plaintiff to the property in dispute, prior to the commencement of this action, it is not necessary to show demand.' "

For a proper understanding of the question raised by the first ground of appeal, a statement of what occurred at the trial, in reference to that matter, is necessary. The witness, Gaillard, there referred to, was introduced by the plaintiff during the development of the testimony in chief; and, after having testified that he was the deputy sheriff, instructed by the sheriff to seize the piano under the chattel mortgage, said that he started to Mrs. Sumter's residence for that purpose, but before reaching the house was stopped by Mr. Reynolds, who seems now to be one of the attorneys of the defendant, but whether he

was such at the time referred to by the witness, does not
appear, though such was, probably, the fact.   The witness
was then asked if he saw *Mr.* Sumter, and replying in the
affirmative, the Court, upon exception taken by counsel for
defendant, ruled that it was not competent for the witness
to testify to anything which passed between the witness and
Mr. Sumter, "unless he can show that Mr. Sumter was the
agent of his wife."   Thereupon the plaintiff closed its tes-
timony in chief without any offer or attempt to show that
Sumter was the agent of his wife.   In the course of the
testimony for the defense, the defendant was examined, and
being asked what occurred between herself and one Press-
ley, another witness for plaintiff, on an occasion previous to
that referred to by Gaillard, denied that Pressley had made
any demand for the piano—saying that he came to see her
for the purpose of making "some arrangement about get-
ting some payment on the piano;" and on her cross-exami-
nation the following took place: "Did you tell Mr. Pressley
that he must see Mr. Sumter?   A. I do not remember
telling him that; he said he wanted to see him.   Q. Was
Mr. Sumter your agent in this matter?   A. He was the
only one who approached me about it.   Q. I mean, was
your husband, Mr. Sumter, your agent in this matter—did
you regard this as being in his charge for you?"   To which
the reply was, "Yes, sir."   When the testimony on the part
of the defense was closed, the witness, Gaillard, was again
offered, in reply, with the announcement from plaintiff's
counsel that they proposed to ask, "what he did with refer-
ence to it?" and after some altercation between counsel, as
to whether the agency of Sumter for his wife had been
sufficiently shown, the Court ruled as follows: "There is no
testimony going to show that there ever was any demand
on Mr. Sumter.   I do not think the question is competent."
There cannot be a doubt that there was no error in the
ruling, when Gaillard was first upon the stand, that any-
thing that passed between the witness and Mr. Sumter was
incompetent, for there certainly was no evidence at that

time that Sumter was the agent of his wife, and it seems
equally clear, that the testimony sought to be obtained
from Gaillard, when he was offered in reply, was incompe-
tent, because it was not in reply to any testimony
brought out in the defense. Sumter had been exam-
ined as a witness for the defense, and while on the
stand he was not asked, either in the direct or cross-exam-
ination, anything as to what occurred between himself and
Gaillard, and there was no other testimony as to that mat-
ter. Hence it was clearly incompetent for the plaintiff to
offer testimony, *in the reply*, as to a matter which had not
been brought out in the testimony in chief, or in the testi-
mony adduced for the defense. If it were otherwise, then
great injustice might be done defendant, as the plaintiff
would thus be allowed the opportunity of laying before the
jury the version of the transaction or conversation between
Sumter and Gaillard, as given by its own witness, without
any opportunity for the defendant to lay before the jury the
version of the transaction or conversation, as it might have
been given by the other party thereto. To prevent such
injustice is one of the main objects of the rule restricting
the testimony in reply to matters which had been pre-
viously referred to in the testimony. In addition to this, it
seems to us that the question ruled out was indefinite to the
last degree, and for that reason exceptionable. The
question proposed to Gaillard was: "What he did in
reference to it?" and what that meant is altogether
uncertain and indefinite. Even if it had been shown, ex-
plicitly, that Sumter was, at the time, the agent of his wife,
it seems to us that the question should have been so framed
as to indicate, at least, that the inquiry was as to something
within the scope of his agency—something that he had
authority to do. The question, as submitted, afforded no
indication whatever that the purpose of it was to show any
demand made upon Sumter for the piano, or any conduct
or conversation on the part of Sumter, showing a willing-
ness to waive such demand. Besides, the testimony as to

the agency was scarcely sufficient to show that Sumter was the agent of the defendant *at that time*, though, possibly, sufficient to show such agency at the time of the interview between defendant and the witness, Pressley. The first ground of appeal must, therefore, be overruled.

As to the second ground of appeal, we must remark, first, that in considering the question as to the correctness of a charge, or of a refusal to charge, reference must be had to the case as made before the court from which such charge, or refusal to charge, proceeds. Hence, unless it appears that there is something in this case showing that the defendant denied the title of the plaintiff to the property in controversy, the request would present a mere abstract proposition of law, the refusal of which would not constitute reversible error, even though such proposition be abstractly correct. There is certainly nothing in the testimony showing that the defendant "*denied the title*" of the plaintiff. Even the witness, Pressley, who was the first witness examined for the plaintiff, says nothing of the kind. This witness, after testifying that he went to see Mrs. Sumter for the purpose of collecting the balance due on the piano, or, to use his own language, "to repossess the instrument," was asked the following question: "When you told Mrs. Sumter that you came up there for the purpose of either repossessing the piano or collecting payments due thereon, what did she say to you?" To which the witness replied: "She said that she could not do anything; she could not do anything one way or the other. Mr. Sumter was not at home." And when asked whether Mrs. Sumter claimed to have paid for the piano, he replied that he did not remember her saying about that. It is very obvious that this testimony, which is all there was as to this point, does not even tend to show that the defendant denied plaintiff's title to the property in dispute; not even by implication arising from her having claimed to have paid the balance of the purchase money, for that witness said: "I don't remember her saying anything about that." But it is claimed that

defendant, by her answer, denied plaintiff's title to the property in dispute. There is no such denial, in express terms, in the answer; and the most that can be said is that it is implied by the averment in the answer that the attorneys for plaintiff had accepted the note and real estate mortgage in payment of the balance of the purchase money of the piano, "*wherefore* this defendant alleges that she holds the legal title to the piano aforesaid, and owes to the plaintiff nothing on said account whatsoever;" so that this so-called denial is not only by implication merely, but was conditioned upon the supposed fact that the acceptance of the said note and real estate mortgage by the attorneys for plaintiff operated as payment, which has proved to be an erroneous supposition. Even if, however, this averment in the answer could be regarded as a denial of plaintiff's title, we are not prepared to concede that this would justify the demand, that the jury should have been charged as requested. It will be observed that the complaint contains no allegation that the defendant, before the commencement of the action, had denied the plaintiff's title, and thereby dispensed with the necessity for a demand and refusal; but, on the contrary, the plaintiff's cause of action is based upon the allegation in the complaint: "That before the commencement of this action the plaintiff duly demanded possession of said piano, but the defendant refused to deliver the same;" and this allegation is distinctly denied in the answer. The averment in the answer as to the acceptance of the note and mortgage above referred to, in payment of the balance due on the piano, and the averment that in consequence of such payment the defendant acquired the legal title to the piano, was set up as a separate defense based upon new matter, and not as a denial of any of the allegations of the complaint; and certainly cannot be regarded as any evidence whatever that the defendant had, *before the commencement of the action*, denied plaintiff's title. There can be no doubt that the defendant originally acquired the *rightful* possession of the piano under the con-

tract of sale set out in the "Case;" and there is as little doubt that, under the terms of that contract, the defendant was under no obligation to *return* the piano to the plaintiff, even if she should make default in any of the payments. All that the contract required of the defendant, in case of default in making any of the payments, was to hold the piano subject to the order of the plaintiff, whose agents were to be permitted to enter the premises of defendant and take and carry away the piano, without incurring any liability to any action for trespass or damages therefor, and without resistance from the defendant; and in the proviso to the section of the contract from which the foregoing terms are extracted, it is expressly stipulated that if "I [the defendant] am required by said L. & B. S. M. H. [the plaintiff company] to surrender the said instrument by reason of failure to comply with the terms of this contract, it shall refund to me all amounts which I have paid upon the instrument in excess of a monthly rental of $7 for the time it is out of its possession, together with" certain specified expenses which need not be repeated here. It seems to us that, under the terms of this contract, the defendant was not only in the rightful possession of the piano at the outset, but that such possession continued to be rightful until the plaintiff made a demand for the surrender, or made some effort to regain the possession of the piano, which was, in some way, resisted by the defendant. Until this was done, the plaintiff had no cause of action, as there was no conversion by defendant. The plaintiff must have a cause of action *before he commences* his action, otherwise he will not be entitled to recover. One of the essential elements in the cause of action of the plaintiff in this case was conversion, and unless that was evidenced by demand and refusal, or by something tending to show that defendant's possession, though rightful in the outset, as all must concede, had become wrongful by some act of defendant *before the commencement of the action*, the plaintiff could not recover. So that even conceding that a denial of the title of

the plaintiff, before the commencement of the action, would be evidence of conversion, and thus dispense with the necessity for showing a demand and refusal, which is only evidence of conversion; and conceding that the averments in defendant's answer can be regarded, at least, as an implied denial of plaintiff's title, that would not be sufficient to sustain this action, for it is obvious that such so-called denial was made *not before, but after* the commencement of the action. From this, it is clear that while the request to charge, upon which the second ground of appeal is based, may have embodied a correct proposition of law in the abstract, yet there was no error in refusing such request, as there was nothing in the evidence to call for or require any such instruction.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.